1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEAN MURPHY,                              Case No. 1:24-cv-00226-JLT-SKO

12              Plaintiff,                      **FINDINGS AND RECOMMENDATIONS
                                                THAT DEFENDANTS' MOTION TO
13        v.                                    DISMISS AND MOTION TO STRIKE BE
                                                GRANTED IN PART AND DENIED IN
14                                              PART**
     DEWAYNE MOORE, individually, and as
15   Code Enforcement Inspector for the City of  **FINDINGS AND RECOMMENDATIONS
     Fresno; CITY OF FRESNO, a City or          THAT PLAINTIFF'S MOTION TO FILE
16   Municipality; and DOES 1-10, Inclusive,    AN UNTIMELY FILING BE GRANTED**

17              Defendants.                      (Doc. 11, 17, 18)

18                                              **OBJECTIONS DUE: 21 DAYS**

19

20

21                           **I.      INTRODUCTION**

22        Plaintiff Dean Murphy, proceeding *pro se*, initiated this action against Dewayne Moore

23   and the City of Fresno (the "City") (collectively, "Defendants") by filing a complaint on February

24   21, 2024.  (Doc. 1).  Defendants filed a motion to dismiss (Doc. 5) on May 13, 2025.  Plaintiff

25   filed a First Amended Complaint (the "FAC") (Doc. 9) on May 30, 2024, mooting Defendants'

26   motion to dismiss.

27        Defendants filed the instant Motion to Dismiss (Doc. 11) on June 13, 2024.  Defendants

28   filed a reply (Doc. 15) on July 2, 2024, even though Plaintiff had not yet filed his opposition.

Plaintiff filed his opposition on July 9, 2024, (Doc. 16) as well as a Motion and Request for Leave to File a Late Opposition (Doc. 17) and a Request for Judicial Notice (Doc. 18).  The motion was referred to the undersigned for the preparation of findings and recommendations.  (*See* Doc. 13).

For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss (Doc. 11) be granted in part and denied in part.  The undersigned further recommends that Defendants' Motion to Strike be granted in part and denied in part.

## II.    MOTION TO FILE A LATE OPPOSITION

As Defendants note, Plaintiff filed his opposition 26 days late.  Under Local Rule 230(c), the Court may treat a late filing as a non-opposition.  In Plaintiff's motion to file a late opposition, he "request[s] leave . . . on the grounds of mistake, inadvertence, surprise, or excusable neglect." (Doc. 17 at 1).  He states he is 88 years old with "corresponding senses limitations."  (Id.).  In determining the deadline to oppose Defendants' motion, he relied on a previous version of the Local Rules that stated: "Opposition, if any, to the granting of the motion shall be in writing and shall be filed and served not less than fourteen (14) days preceding the noticed (or continued) hearing date."  Plaintiff mistakenly believed his deadline to file an opposition was July 9, 2024, two weeks before the hearing was originally scheduled.  (Doc. 17 at 2).

Under Federal Rule of Civil procedure 6(b)(1)(B), a court may extend the time for a party to file a motion after the time to do so has expired if the party failed to act because of "excusable neglect."  In assessing "excusable neglect," courts consider four factors: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith."  Pincay v. Andrews, 389 F.3d 853, 855 (9th Cir. 2004).  While there is a risk Defendants will be prejudiced, they did not oppose Plaintiff's motion for an extension.  (See Docket).  The remaining factors weigh in Plaintiff's favor.  Ultimately, the delay did not affect judicial proceedings, and Plaintiff acted in good faith.  Because Plaintiff is proceeding pro se, the undersigned recommends GRANTING Plaintiff's Motion and Request for Leave to File a Late Opposition (Doc. 17).

Plaintiff is cautioned, however, failing to comply with court-imposed deadlines in the future may result in sanctions, including the striking of an untimely filing. [Since this is a recommendation, it should be included in the body of the order.]

### III.    REQUESTS FOR JUDICIAL NOTICE

Plaintiff and Defendants have requested that the Court take judicial notice of various documents included with their filings.  (Docs. 11, 18).  Defendants request the Court take judicial notice of sections of the Fresno City Charter, notices and citations sent by Defendants to Plaintiff, and a docket search from Fresno County Superior Court.  (Doc. 11-2 at 1-3).  Plaintiff's request includes a copy of the claim for damages that he filed with the City, the claim rejection document, and a section of the City's Municipal Code.  (Doc. 16 at 1).  Neither party opposed the other's request.  (*See* Docket).

Pursuant to Federal Rule of Evidence 201, a court may properly take judicial notice of matters in the public record.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  A court may take judicial notice of a public record not for the truth of the facts recited in the document, but for the existence of the matters therein that cannot reasonably be questioned.  *See* Fed. R. Evid. 201.  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted).  If a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document.  *Id.*  A court may also judicially notice a fact that is "not subject to reasonable dispute," or a fact that is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2). ("[A] court cannot take judicial notice of disputed facts contained in [judicially noticeable] public records.") (citation omitted).

Because the documents the parties request to be judicially noticed are either government-issued or matters of public record, the undersigned recommends granting Plaintiff's and Defendants' requests to take judicial notice of the documents, although the Court will not take

notice of disputed facts therein.  *See, e.g., Diamond S.J. Enterp., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1217–18 (N.D. Cal. 2019) (finding the Court would take judicial notice of city and county decisions because "[p]ublic records, including judgments and other publicly filed documents, are proper subjects of judicial notice") (citing *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007)); *Madani v. County of Santa Clara*, No. 16-CV-07026, 2017 WL 1092398, at *4 ("The . . . appeals to the Santa Clara County Personnel Board, and the transcript of the hearing before the Santa Clara County Personnel Board are records of state and county administrative agencies that are judicially noticeable."); *Soublet v. County of Alameda*, No. 18-cv-03738, 2019 WL 12517063, at *16 n.8 (finding county code section proper subject of judicial notice) (N.D. Cal. Dec. 6, 2019) (citing *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004)); *Via v. City of Fairfield*, 833 F.Supp.2d 1189, 1194 (E.D. Cal. 2011) ("Defendants request that the court take judicial notice of the Claim for Damages plaintiff submitted to the City . . . and the City of Fairfield's Notice of Rejected Claim . . . . Because both of these documents are public records and plaintiff does not dispute the authenticity of the copies provided or object to the court's consideration of them, the court will take judicial notice of the two documents").

## IV.    FACTUAL AND PROCEDURAL BACKGROUND

In considering Defendants' Motion, the Court accepts as true all factual allegations contained in the FAC.  *See, e.g., Rotkiske v. Klemm*, 140 S. Ct. 355, 359 n.1 (2019) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)).

Plaintiff owned apartments located at 1529-1547 East Olive Avenue in Fresno, California. (Doc. 9 at 2).  On February 7, 2022, Defendants provided a Notice of Intent to Inspect the property for violations of the city municipal code and/or the California Health and Safety Code. (Doc. 11-2 at 8).  After inspecting the property, the City issued a Correction Notice of Violation to Plaintiff, indicating Plaintiff was required to remedy various code violations on the property. (Doc. 11-2 at 13).  In the notice, Defendants listed 12 building code violations on Plaintiff's property, including that the building was being used for apartments, contrary to its intended and approved use.  (*Id.*).  Other violations included a damaged electrical service panel, damaged and

unsanitary structures, and junk on the property.  (Doc. 11-2 at 15).  The notice required Plaintiff to correct all violations by March 15, 2022.  (*Id.*).

After an inspection on June 6, 2022, Defendants issued Plaintiff an administrative citation because Plaintiff had failed to remedy the violations listed in his February 2022 notice.  (Doc. 11-2 at 47).  The citation included a paragraph informing Plaintiff he had the right to appeal, though it does not appear Plaintiff did so.  (Doc. 11-2 at 47).  Defendants issued a second citation on August 17, 2022, for Plaintiff's continued failure to remedy the code violations identified in February 2022.  (Doc. 11-2 at 60).  This citation also included a paragraph informing Plaintiff he had the right to appeal the citation, though it does not appear that he did.  (Doc. 11-2 at 60).

More than one year later, on March 30, 2023, a fire took broke out at the apartment located at 1539 East Olive Avenue. (Doc. 9 at 2).  The next day, on March 31, 2023, Plaintiff took a maintenance crew into the apartment.  (Doc. 9 at 2).  Plaintiff noticed the occupant of another apartment using a generator, as the power had been turned off.  (Doc. 9 at 2).  Plaintiff told the occupant to stop using the generator because it was dangerous.  (Doc. 9 at 2-3).  At some point,[1] Fresno City Code Enforcement Inspector Dewayne Moore entered the property and informed Plaintiff he was a Code Enforcement Inspector for the City of Fresno.  (Doc. 9 at 3).  After a disagreement, Mr. Moore ordered Plaintiff to leave the property and to refrain from speaking with the "squatters, occupants, or tenants as they claimed to be."  (Doc. 9 at 3).  Defendants had not yet ordered the property be vacated or secured pursuant to city code, though city officials did issue such an order on April 3, 2023.  (Doc. 9 at 3).  Mr. Moore made this decision primarily because the electricity had been cut off from the property.  (Doc. 11-2 at 101).  Mr. Moore believed it would take at least 60 days for Plaintiff to complete the process to restore electricity and gas to the property.  (Doc. 11-2 at 103).

Plaintiff returned to the property on April 3, 2024, where Defendant had posted signs that read: "DO NOT ENTER [] Building Official [] City of Fresno [] 1543 E Olive Ave [] D. Moore []

---

[1] There seems to be some inconsistencies about when Mr. Moore visited the property.  Plaintiff alleges in his complaint that Mr. Moore visited the property on March 31, 2023, while hearing testimony states that this took place on April 3, 2023.  (Doc. 11-2 at 99).  For the purposes of this motion, the Court must take the facts pleaded in the complaint as true.  *Great Minds*, 945 F.3d at 1209.

Code Enforcement Inspector [] It is a misdemeanor to occupy this building." (Doc. 9 at 3-4). The sign was posted at 1543 East Olive Avenue, which was not the apartment that had suffered the fire. (*See* Doc. 9 at 3-4). This posting was pursuant to Fresno Municipal Code Section 11-332, which states in part:

> (a) If the building or structure is in such condition as to make it immediately dangerous to the life, limb, property or safety of the public or of the occupants, it may be ordered to be vacated and secured, pursuant to this article.

> (b) In deciding whether to require vacation and demolition of the building or structure or repair as necessary, the Building Official shall comply with the guidelines of Health and Safety Code Section 17980.

> (c) If the building is ordered vacated, the Building Official shall post the building at each entrance thereto a notice reading:

> DO NOT ENTER

> UNSAFE TO OCCUPY

> BUILDING OFFICIAL CITY OF FRESNO

> It is a misdemeanor to occupy this building or to remove or deface this notice . . . .No person shall remain in or enter any building which has posted with a notice as prescribed in this subsection, except that entry may be made to repair, demolish, or remove such building or as to otherwise permitted by the Building Official.

(Doc. 11-1 at 9-10). Plaintiff also received a letter from the City on April 3, 2023, that notified Plaintiff that the tenants at 1543 East Olive Avenue (which was not the apartment damaged in the fire) were eligible for relocations based on the following:

> Inspection of the above-referenced property revealed numerous violations of the California Health and Safety Code. The City of Fresno's (the City) Code Enforcement has determined the violations at the subject property are so extensive and of such a nature that the immediate health and safety of the residents is endangered and the property must be vacated by April 3, 2023, at 5:00 p.m. If you wish to file an appeal, the appeal must be filed with the City Manager's Office within 15 days of this Notice. (FMC § 11-407.)

(Doc. 11-2 at 77). In the photos attached to the notice, Defendants included photos highlighting "illegal storage," "junk and debris," and "junk and debris from fire damage unit." (*Id.* at 83-85). A second fire damaged the property on April 5, 2023. (Doc. 9 at 3-4).

On April 12, 2023, Plaintiff filed an appeal of the April 3, 2023, decision. (*Id.* at 88). In his appeal form, he stated, "I appeal the 4/3/23 violations, vacate-premises, and tenant eligibility

relocation benefits order." (*Id.* at 93).  He further explained:

> Except for stale violations of inoperative vehicles the tenants had at 1543 E Olive on or about 2/18/22 which had long been removed, I know of no other recent violations constituting an immediate health and safety endangerment to its residents justifying the 4/3/23 order to vacate it.  Such violations were in any event caused by the tenants which makes them ineligible for relocation benefits.  If a recent fire at 1539 E Olive (a different unit) was the basis of this order, as I was told, it is inapplicable to 1543, and even if it were applicable to it, relocation benefits are precluded because the unit 'became unsafe or hazardous as the result of a fire" (Fresno Municipal Code § 11-338(d)).

The City scheduled an appeal hearing for July 11, 2023.  (*Id.* at 90).

A third fire destroyed the remaining buildings on Plaintiff's property on April 16, 2023.  (Doc. 9 at 3-4).  On April 18, 2023, the City provided Plaintiff with a Correction Notice requiring Plaintiff to remove fire-damaged structures by June 6, 2023.  (Doc. 11-2 at 139).

An administrative hearing officer held a hearing on August 9, 2023, based on Plaintiff's April 12, 2023, appeal.  (Doc. 11-2 at 95).  In a decision dated August 22, 2023, the hearing officer denied Plaintiff's request to dismiss the notice requiring Plaintiff to pay relocation benefits to tenants who were forced to vacate his property on April 3, 2023.  (Doc. 11-2 at 111).  Plaintiff had the right to appeal this decision.  (AR 11-1 at 112), but there are no facts indicating Plaintiff filed an appeal.

On July 27, 2023, Defendants issued a notice setting a nuisance abatement hearing for August 14, 2023, based on Plaintiff's failure to remove the fire-damaged structures on his property.  (Doc. 11-2 at 158).  In a decision dated August 15, 2023, an administrative hearing officer granted Defendants' request for abatement of the public nuisance at Plaintiff's property by demolition at Plaintiff's expense.  (Doc. 11-2 at 169).   The decision included a notice of Plaintiff's right to appeal.  (*Id.*).

Plaintiff filed his FAC (Doc. 9) on May 30, 2024.[2]  Plaintiff seeks (1) $1,000,000 in general damages for each claim of relief, (2) $2,000,000 in punitive damages against Mr. Moore, (3) $25,000 in civil penalty and treble damages pursuant to his Fourth Claim for Relief; (4) attorney's fees, (5) costs and (6) any other relief the Court deems proper.  (Doc. 9 at 7-8).

---

[2] The Constitutional and statutory bases for each claim will be discussed further below.

## V.     LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim," and dismissal is "proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). "To survive a motion to dismiss, the plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At this stage, the Court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019). "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663–64. "'[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'" *Twombly*, 550 U.S. at 562.

In resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1030–31 (9th Cir. 2008) (internal quotation marks omitted). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

To the extent the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Federal Rule of Civil Procedure 15(a)(2) advises that "[t]he court should freely give leave when justice so requires." "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

The Court, on its own motion, "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Bradley-Aboyade v. Crozier*, No. 2:19-cv-01098-TLN-AC, 2021 WL 3472238, at *3 (E.D. Cal. Aug. 6, 2021) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)) (internal quotation marks omitted). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*.

When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly–Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001). Where the Court has already granted a plaintiff leave to amend a complaint, however, the Court's discretion to decide whether to allow additional opportunities to amend is "particularly broad." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004); *accord Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 794 (9th Cir. 2012). In general, a pro se litigant will be granted an opportunity to amend deficient pleadings ordinarily. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). However, the Court may dismiss a complaint without leave to amend where its deficiencies will not be cured by an amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *see also Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013).

## VI.   DISCUSSION

### A.   Plaintiff's Complaint

Plaintiff asserts the following claims in his FAC: (1) First Claim for Relief (the "free speech claims") pursuant to the First, Fifth, and 14th Amendments to the U.S. Constitution; and Article 1, sections 2, 17, and 19 of the California Constitution; (2) Second Claim for Relief (the "search and seizure claims") pursuant to the Fourth Amendment to the U.S. Constitution and Article I, section 13 of the California Constitution; (3) Third Claim for Relief (the "due process and takings claims") pursuant to the Fifth and 14th Amendments to the U.S. Constitution; and

Article 1, sections 7 and 19 of the California Constitution; (4) Fourth Claim for Relief (the "Bane Act" claim) pursuant to the California Civil Code § 52.1; and (5) false imprisonment.  (Doc. 9 at 5-6).

Plaintiff's free speech and search and seizure claims allege that Plaintiff's rights were violated "without due process of law."  Plaintiff also cites the 14th Amendment as an avenue for relief.  Construing the pleading liberally as it must, (*see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), the Court interprets Plaintiff's first two claims to include a due process claim in addition to a § 1983 claim based on the First and Fourth Amendments, respectively.

Under Plaintiff's Third Claim for Relief, he alleges the following:

> Defendants . . . . in conscious disregard to Plaintiff's right against state taking and deprivation of property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, §§ 7 and 19 to the California Constitution deprived Plaintiff's real Property.

(Doc. 9 at 6).  The Court, construing the complaint liberally, interprets this claim to include a 14th Amendment procedural due process claim, a Fifth Amendment takings claim, and an inverse condemnation claim under the California Constitution.[3]

Because most of Defendants' arguments apply to multiple claims for relief, the Court will address Defendants' motion argument-by-argument rather than by Plaintiff's claims for relief.

**B.   Plaintiff's Claims Under the California Constitution**

**1.   Plaintiff Has Not Alleged He Is Entitled to Monetary Relief Under Sections 2, 7, or 13**

Defendants first contend there are no causes of action for monetary relief under Article 1,

---

[3] To the extent that Plaintiff intended to plead a substantive due process claim, he must allege that the government deprived him of property rights "in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the concept of ordered liberty.'" *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009) (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998)).  Even construing the complaint liberally, the undersigned does not interpret Plaintiff's complaint to include a substantive due process claim.  If Plaintiff intended to do so, he must clarify and properly allege this claim in his amended complaint.

sections 2, 7, or 13 of the California Constitution.[4]  (*See* Doc. 11-1 at 12).  Plaintiff seeks relief under these sections in his First, Second, and Third Claims for Relief, respectively.  (*See* Doc. 9).  Defendants request the Court dismiss these claims and/or strike them from Plaintiff's pleading.

### a.    Article 1, section 2

Defendants cite *Degrassi v. Cook*, 29 Cal.4th 333, 342 (2002) to demonstrate there is no claim for damages under Article 1, section 2 of the California Constitution.  In *Degrassi*, the California Supreme Court held that "[f]or the reasons set out above, we decline to recognize a constitutional tort action for damages to remedy the asserted violation of article I, section 2(a), alleged in the present case. *This does not mean that the free speech clause, in general, never will support an action for money damages*." *Degrassi*, 29 Cal.4th at 344 (emphasis added).  Courts in this Circuit, however, generally have not recognized a private right of action for money damages under this section.  *See Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1100 (N.D. Cal. 2013) ("[N]o court . . . has yet to recognize a private right of action for damages under article I, section 2(a) since *Degrassi* [*v. Cook*, 29 Cal. 4th 333 (2002)]."); *Madrid v. H. Anglea*, No. 1:19-cv-01456-JLT (PC), 2022 WL 1689709, at *5 (E.D. Cal. April 7, 2020) ("In addition, section 2(a) does not generally provide a private right of action for money damages."); *So v. Bay Area Rapid Transit*, 2013 WL 5663207, at *11 (N.D. Cal. Oct. 17, 2013) (finding that "[w]hile the *Degrassi* court left open the possibility that a set of facts could theoretically support a private right of action, no court applying the *Katzberg* factors has recognized a private right of action for damages under Article I, Section 2 since *Degrassi*.").

The burden is on the Plaintiff to establish a private right of action.  *Cuviello*, 940 F. Supp. 2d at 1100); *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal.App. 4th 121, 133 (Cal.Ct.App. 1997) ("[W]hen neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy,

---

[4] Article 1, section 2 provides "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." Cal. Const. art. 1, § 2, subd. (a).  Article 1, section 7 provides that "[a] person may not be deprived of life, liberty, or property without due process of law."  Cal. Const. art. 1, § 7, subd. (a).  Article 1, section 13 guarantees the right to be free from unreasonable searches and seizures.  Cal. Const. art. 1, sec. 13.  Article 1, section 19 provides that "[p]rivate property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." Cal. Const. art. 1, sec. 19.

perhaps insurmountable, burden of persuasion.”). To determine whether the California Constitution creates a private right of action, court undertake a two-party analysis: (1) the Court must “look at the language and history of the provision for an affirmative intent to authorize a claim for damages;” and (2) the Court must then consider the four factors set forth in *Katzberg v. Regents of University of California*, 29 Cal.4th 300, 324, 58 P.3d 339 (2002). *So,* 2013 WL 5663207, at *11. These four factors are (1) “the adequacy of existing remedies”; (2) “the extent to which a constitutional tort action would change established tort law”; (3) “the nature of the provision and the significance of the purpose that it seeks to effectuate”; and (4) “whether any special factors would counsel hesitation in recognizing such a damages action,” such as “deference to legislative judgment, avoidance of adverse policy consequences, considerations of governmental fiscal policy, practical issues of proof, and competence of courts to assess particular types of damages.” 29 Cal.4th at 325–29. The California Supreme Court has held the language and history of article 1, section 2, does not indicate an affirmative intent to authorize a claim for damages. *Degrassi*, 29 Cal. 4th at 339.

Plaintiff makes no argument in his opposition related to *Katzberg*. Instead, Plaintiff contends his right to damages is governed by *Wilkerson v. City of Placentia* (1981) 118 Cal.App.3d 435 and *Lubey v. City and County of San Francisco* (1979) 98 Cal.App.3d 340. These cases are inapposite and do not address a private right of action under Article 1, section 2.

The *Katzberg* factors, however, also weigh against a private right of action. Plaintiff has adequate alternative remedies, as Plaintiff can (and has) alleged a § 1983 claim and a claim under the Bane Act. (*Cuviello*, 940 F.Supp. 2d at 1100) (finding that the Bane Act claim may provide an adequate remedy for a plaintiff alleging a claim under article I, section 2(a) of the California Constitution). As for the second factor, recognizing a constitutional tort for the alleged violations would significantly alter established tort law by expanding government liability for actions taken to enforce building code. The third Katzberg factor is not one “of great significance,” in this case. *Cuviello*, 940 F. Supp.2d. at 1101 (“As neither the first nor the second *Katzberg* factor militate in favor of recognizing a constitutional tort, the importance of the free speech right (the third factor) outlined in article I, section 2(a) of the California Constitution ‘is not a factor of

great significance.'") (quoting *Degrassi*, 29 Cal.4th at 343).  Similarly, the Court is not required to consider any "special factors."   (*Cuviello*, 940 F.Supp.2d at 110) ("Where the first two *Katzberg* factors do not militate in favor of recognizing a constitutional tort, the Court 'need not consider, in addition, whether any special factors would counsel hesitation in recognizing such a damages action.'") (quoting *Katzberg*, 29 Cal.4th at 329).

Plaintiff carries a "heavy, perhaps insurmountable, burden of persuasion" that he has a private right of action, and he has not carried that burden.  *Crusader Ins. Co.*, 54 Cal.App. 4th at 133. Accordingly, Plaintiff has not alleged a claim under Article 1, section 2 of the California Constitution, and the undersigned recommends dismissing this claim without leave to amend, as amendment would be futile. *Cuvillo*, 940 F.Supp.2d at 1101 (dismissing a claim for monetary damages under article I, section 2(a) with prejudice).

### b.      Article 1, section 7

Likewise, courts in this Circuit have held that a Plaintiff cannot recover monetary damages under Article 1, section 7 of the California Constitution.  *See, e.g.*, *Sarafyan v. Elson*, No. CV 18-9574-GW, 2019 WL 3308770, at *7 (C.D. Cal. Feb. 21, 2019) (finding no private right of action under Section 7); *Tarkington v. Cnty. of Los Angeles*, No. CV 18-07636-CJC, 2019 WL 1002516, at *9-*10 (C.D. Cal. Jan. 16, 2019) ("[T]he California Supreme Court has expressly stated that section 7 of the California Constitution alone does not confer a right to money damages"); *Roy v. Cnty. of Los Angeles*, 114 F. Supp. 3d 1030, 1042 (C.D. Cal. 2015) (holding that Section 7 does "not permit actions for monetary damages"); *see also Katzberg v. Regents of Univ. of Cal.*, 29 Cal. 4th 300, 326, 127 Cal.Rptr.2d 482, 58 P.3d 339 (2002) (finding that Plaintiff could not bring a claim for monetary damages under Section 7).  As with section 2, Plaintiff has alleged no facts to establish such a private right of action under section 7. Accordingly, Plaintiff has not alleged a claim under Article 1, section 7 of the California Constitution, and because amendment would be futile, the undersigned recommends dismissing this claim without leave to amend.  *Cravotta v. County of Sacramento*, No. 2:22-cv-00167-DJC-AC, 2024 WL 645705, at *11 (E.D. Cal. Feb. 15, 2024) (dismissing a claim under Cal. Const. art. 1, section 7 with prejudice to the extent it sought monetary damages).

### c.       Article 1, section 13

It is not clear that any California appellate courts have addressed whether monetary damages are available under Article 1, section 13 of the California Constitution, and Courts in this circuit have been reluctant to address the issue without further guidance from California courts. *See Gonzalez v. Cnty. of Los Angeles*, 2023 WL 4247196, at *8 (C.D. Cal. Apr. 20, 2023) (declining to exercise supplemental jurisdiction over the plaintiff's action for money damages under Article 1 § 13 of the California Constitution because "judicial recognition of a right to bring a cause of action under the California Constitution should first be made by California state courts."). Some courts have held Article 1, section 13 does not confer a private right of action for damages. *See Roy*, 114 F. Supp. 3d at 1043 ("Finding no evidence of an intent to authorize or deny a damages action, nor any factors strongly favoring the recognition of a constitutional tort, the Court concludes that article I, section 13 does not confer an action for money damages."); *Sarafyan v. Elson*, No. 18-9574-GW(KSx), 2019 WL 3308770, at * (C.D. Cal. 2019) ("Even if Plaintiff had complied with the GCA, there is no private right of action for alleged violations of article I, sections 7(a) and 13 of the California constitution."). Plaintiff has failed to cite any authority providing otherwise. Accordingly, Plaintiff has not alleged a claim under Article 1 § 13 of the California Constitution, and the undersigned recommends dismissing without leave to amend, as amendment would be futile. *Wood v. County of Stanislaus*, No. 2:21-cv-01572-TLN-CSK, 2024 WL 3951113, at *9 (E.D. Cal. Aug. 27, 2024) (dismissing a claim under article 1, section 13 of the California Constitution because where Plaintiff sought monetary relief, as amendment would be futile).

### 2.       Plaintiff Has Not Sufficiently Alleged a Claim Under Section 19

Defendants contend that Plaintiff has not set forth sufficient allegations to support an inverse condemnation claim under article 1, section 19 of the California Constitution. (Doc. 11-1 at 12). "Article 1, section 19 . . . allows a property owner to recover 'just compensation' from a public entity for private property that is 'taken or damaged for a public use.'" *Mercury Casualty Co. v. City of Pasadena*, 14 Cal.App.5th 917, 825 (2017) (quoting *Locklin v. City of Lafayette*, 7 Cal.4th 327, 362 (1994)). "Inverse condemnation liability ultimately rests on the notion that the

private individual should not be required to bear a disproportionate share of the costs of a public improvement." *Belair v. Riverside County Flood Control Dist*., 47 Cal.3d 550, 566 (1988). What constitutes a public improvement is a question of law. *Barham v. Southern Cal. Edison Co.* 74 Cal.App.4th 744, 752 (1999).

Even construing the complaint liberally, Plaintiff has not identified how Defendants took his property for public improvement, and "[w]ithout a public improvement or public work, there can be no physical taking or consequent inverse condemnation liability." *Customer Co. v. City of Sacramento*, 10 Cal.4th 368, 383, 895 P.2d 900 (1995). Accordingly, the undersigned recommends granting Defendants' motion to dismiss on this claim. Because it is not clear the pleading could not possibly be cured by the allegation of other facts, the undersigned recommends granting leave to amend. *Bly–Magee v. Cal.*, 236 F.3d at 1019.

### D.      Plaintiff Has Sufficiently Alleged *Monell* Liability under § 1983

Defendants contend Plaintiff's claims based on the U.S. Constitution must be dismissed because Plaintiff does not sufficiently allege *Monell* liability under § 1983. "[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). Municipalities, like the City, are answerable only for their own decisions and policies, and they are not vicariously liable for the constitutional torts of their agents. *Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978). To establish liability under *Monell*, a plaintiff must allege: "(1) that he [or she] possessed a constitutional right of which he was deprived; (2) that the [local governmental entity] had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citation and internal quotation marks omitted).

"A local government entity cannot be held liable under section 1983 unless the plaintiff alleges that the action inflicting injury flowed from either an explicitly adopted or a tacitly authorized [governmental] policy." *Ortez v. Washington Cty., State of Or.*, 88 F.3d 804, 811 (9th Cir. 1996) (citation and quotations omitted) (alteration in original). Liability "must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Thompson v. Los Angeles*, 885 F.2d 1439, 1443-1444 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), *overruled on other grounds by Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010).

"A municipality can be liable even for an isolated constitutional violation, however, when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). "Whether a particular official has final policy-making authority is a question of state law." *Jessen v. Cnty. of Fresno*, 808 F. App'x 432, 435 (9th Cir. 2020). "The authority to exercise discretion while performing certain functions does not make the official a final policymaker unless the decisions are final, unreviewable, and not constrained by the official policies of supervisors." *Zofragos v. City & Cty. of San Francisco*, 2006 WL 3699552, at *16 (N.D. Cal. Dec. 13, 2006).

Plaintiff has not alleged that his injury flowed from either an explicitly adopted or tacitly authorized government policy.  (Doc. 16 at 3); *Ortez*, 88 F.3d at 811.  Plaintiff instead contends Mr. Moore had the final policymaking authority to order Plaintiff not to speak to the occupants and to order that he vacate his property, thereby establishing *Monell* liability.  (Doc. 16 at 3). Defendants argue Mr. Moore did not have any final policymaking authority, as "[t]here is a distinction between final policymaking authority and final decision-making authority," citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482 (1986).  (Doc. 11-1 at 14).  In *Pembaur*, the Supreme Court stated:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

*Pembaur*, 475 U.S. at 482.  Defendants contend that while Mr. Moore had discretion on how to fulfill his duties, that discretion does not amount to final policymaking authority sufficient to

1  establish *Monell* liability.

2         In California, "building officials" (like Mr. Moore) are "invested with the responsibility

3  for overseeing local code enforcement activities, including administration of the building

4  department, interpretation of code requirements, and direction of the code adoption process."

5  Cal. Health & Safety Code § 18949.27.  Building officials are also "authorized and directed to

6  enforce the provisions of this code" and "to render interpretations of this code and to adopt

7  policies and procedures in order to clarify the application of its provisions."   CBC § 104.1.

8  Similarly, under Fresno Municipal Code,

9
10
> The Building Official is hereby authorized and directed to enforce all of the provisions of this article.  For such purposes, the Building Official shall have the powers of a law enforcement officers.

11
12
> The Building Official shall have the power to render interpretations of this article and *to adopt and enforce rules and supplemental regulations in order to clarify the application of its provisions*.

13
14
15
16
17
18
> The Building Official is authorized to enter upon any property or premises to ascertain whether provisions of this article or applicable state codes, regulations or ordinances are being obeyed, and to make examination and surveys as may be necessary in the performance of their duties.   These may include taking photographs, video, samples or other physical evidence.  All inspections, entries, examinations and surveys hall be done in a reasonable manner and with the consent of the owner, agent or occupant.  If an owner occupant or agent refuses permission to enter or inspect, the Building Official may seek an administrative warrant.

19  (Doc. 18 at 6) (emphasis added).

20         Because Mr. Moore may "adopt and enforce rules and supplemental regulations" to

21  enforce the City's building code, Plaintiff has plausibly alleged that Mr. Moore has "final

22  policymaking authority" when he ordered Plaintiff to vacate the property and to refrain from

23  speaking to the occupants.  *McMillian v. Monroe County*, 520 U.S. 781, 785 (1997); *see also*

24  *Temple of 1001 Buddhas v. City of Fremont*, 588 F.Supp.3d 1010, 1022 (N.D. Cal. March 4,

25  2022) (finding a city building official had "final policymaking authority" under California law);

26  *Herrera v. City of Palmdale*, 2020 WL 7380144, at *8 (C.D. Cal. Oct. 8, 2020) (finding that

27  Plaintiff had plausibly alleged that the building official had final policymaking authority where

28  the municipal code "delegate[d] final policymaking authority to the Building Official to interpret,

1  adopt, enforce, and create building code regulations, to investigate such violations, and to shut

2  down buildings in violation of code violations"). "It is the burden of the party bringing a motion

3  to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2) have

4  not been met." *Bryant v. Apotex, Inc.*, No. 12-01377, 2013 WL 394705, at *5 (E.D. Cal. Jan. 30,

5  2013) (quoting *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1165 (C.D. Cal. 2002)). Without

6  further argument from Defendants, Plaintiff has sufficiently alleged at this stage that Mr. Moore

7  had final policymaking authority sufficient to establish *Monell* liability. Accordingly, the

8  undersigned recommends denying Defendants' motion to dismiss on this basis.

9  **E.    Plaintiff Has Sufficiently Pled a § 1983 Claim Based on the Fourth Amendment**

10    Plaintiff's Second Claim for Relief alleges Defendants "intentionally, willfully,

11  wrongfully, capriciously, arbitrarily, and in conscious disregard to Plaintiff's right to be free from

12  [unreasonable] seizures guaranteed by the Fourth Amendment to the United States Constitution

13  and Art 1 § 13 to the California Constitution, and without due process of law, seized Plaintiff

14  personally off his property and seized his real Property." (Doc. 9 at 5). Defendants contend

15  Plaintiff cannot maintain a § 1983 in Plaintiff's Third Claim because Defendants actions do not

16  constitute a "seizure" of his property.

17    The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons,

18  houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and

19  no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. It "safeguard[s] the

20  privacy and security of individuals against arbitrary invasions by government officials." *Camera*

21  *v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967). The Fourth Amendment

22  extends to "arbitrary invasions" by health, fire, or building inspectors. *Michigan v. Tyler*, 436

23  U.S. 499, 504 (1978). "A seizure of property occurs when there is some meaningful interference

24  with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S.

25  109 (1984) (internal quotation marks and footnotes omitted). "The 'seizure' of a 'person,' . . .

26  can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the

27  liberty' of the person." *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (quoting *Terry v. Ohio*, 392

28  U.S. 1, 19 (1968)). "A person has been 'seized' within the meaning of the Fourth Amendment

only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D*., 499 U.S. 621, 627-28) (1991) (quoting *U.S. v. Mendenhall*, 466 U.S. 544, 545 (1980)).

At this stage, Plaintiff has sufficiently alleged a "seizure" of his property, as Mr. Moore ordered that Plaintiff vacate the property, and this may have amounted to a "meaningful interference with an individual's possessory interest in that property."   *Jacobsen*, 466 U.S. at 109.   The cases cited by Defendants are unpersuasive.

In *Dalewood Holding LLC v. City of Baldwin Park,* 859 F.App'x 62, 64 (9th Cir. 2021), the Ninth Circuit found there was no "meaningful interference with [the Plaintiff's] possessory interest in [the] property" when City officials "continue[d] to threaten to seize illegally the property and remove the buildings on it."   *Dalewood Holding*, 859 F.App'x at 64.   Defendants also contend Plaintiff was not divested ownership of the property and the notice posted on the apartment would allow Plaintiff to enter the building to repair, demolish, or remove the building. (Doc. 11-1 at 16).

Plaintiff, however, was ordered to vacate his property on March 31, 2023, without any indication of when or under what conditions he could return, and the notice that stated he could enter the building to repair or demolish the building did not appear until April 3, 2023.   At this stage, Plaintiff has alleged a "meaningful interference with an individual's possessory interest in that property," and therefore, the undersigned recommends denying Defendants' motion to dismiss as to this claim.

**G.     Plaintiff Has Not Sufficiently Pled a Due Process Claim**

Defendants contend Plaintiff cannot establish a due process claim because (1) he was afforded due process through the appeals opportunities presented after he received various citations from the City, and (2) because he has state remedies available to him.  (Doc. 11-1 at 16-18).

The Fourteenth Amendment of the U.S. Constitution protects against the deprivation of liberty or property by the government without due process. *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  "A section 1983 claim based upon procedural due process . . .

19

has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests—property interests—may take many forms." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). A person has a protected property interest in a benefit only if they "have a legitimate claim of entitlement to it." *City of Castle Rock v. Gomez*, 545 U.S. 748, 756 (2005). "At a minimum, Due Process requires a hearing before an impartial tribunal." *Shanko v. Lake County*, 116 F.Supp.3d 1055, 1065 (N.D. Cal. July 27, 2015) (quoting *Clements v. Airport Auth. of Washoe Cnty.,* 69 F.3d 321, 333 (9th Cir. 1995).

In Plaintiff's complaint, he alleges:

> Defendants intentionally, willfully, wrongfully, capriciously, arbitrarily, and in conscious disregard to Plaintiff's right against state taking and deprivation of property without due process of law guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article 1, §§ 7 and 19 to the California Constitution deprived Plaintiff's real Property described in ¶ 7, herein. As a proximate consequence thereof Plaintiff has been injured, continues to be injured, and will be permanently harmed. Defendants' conduct, as plead in paragraphs ¶¶ 8-12, above, was a substantial factor in causing Plaintiff's 'harm.'

(Doc. 9 at 6). Defendants contends that Plaintiff's allegations fail to state a due process claim because Defendants afforded Plaintiff sufficient time and process to appeal in the underlying administrative citations, notices, and orders, and they do not seem to contest that he had sufficient property interests. (Doc. 11-1 at 17-18). ("To evaluate procedural due process claims, Courts usually examine two elements: whether there exists a liberty or property interest which has been interfered with by the State; and whether the procedures attendant to that deprivation were constitutionally sufficient . . . . For purposes of this motion, the City Defendants focus on the second component."). Plaintiff counters:

> Plaintiff's due process claim is that he was silenced and thrown off his property without notice or opportunity to be heard before the City ordered his property and vacated and posted it so. It cannot be disputed that Plaintiff did not have a liberty interest to speak at will or a property interest to remain on his property.

(Doc. 16 at 4).

20

To the extent Plaintiff contends the Court should not dismiss his due process claim in the First Claim for Relief because he has a liberty interest in his First Amendment rights (as he has alleged) the undersigned finds that Defendants do not request that the Court dismiss this claim. With regard to Plaintiff's interest in his property, Plaintiff has not established how he was afforded insufficient process. Where property owners are "provided with notice of the building code violations and with an opportunity to appeal," they are afforded adequate due process. *Garner v. City of Federal Way*, 316 Fed.Appx. 638, 639 (9th Cir. 2009). Plaintiff participated in an appeal and hearing process related to his administrative citations and other actions taken by Defendants, and Plaintiff has not otherwise alleged why this process was constitutionally inadequate.

~~The Court also agrees that~~ Plaintiff cannot sustain his procedural due process claim because there are adequate state remedies available to challenge Mr. Moore's decision. *Citizens for Free Speech, LLC v. Cty. Of Alameda*, 2020 WL 999644, at *7 (N.D. Cal. Mar. 2, 2020) ("It is well settled that the availability of a state remedy bars a section 1983 due process claim."); *see also Arroyo Vista Partners v. County of Santa Barbara*, 732 F. Supp. 1046, 1052-53 (C.D. Cal. 1990) ("A state provides adequate procedural due process when it offers reasonable remedies to rectify a legal error by a local administrative body.") (citing *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 879 (9th Cir. 1987)). "The existence of a post-deprivation procedure is sufficient remedy for the alleged violation of property rights." *Brogan v. San Mateo County*, 901 F.2d 762, 764 (9th Cir. 1990).

Plaintiff does not allege that he took advantage of the available state remedies by filing a writ of mandamus under Section 1094.5 of the California Code of Civil Procedure to challenge any adverse administrative decisions. *Arroyo Vista Partners*, 732 F. Supp. 1046, 1053 (C.D. Cal. 1990) ("[R]elief pursuant to a Writ of Mandate under § 1094.5 of the California Code of Civil Procedure is available to challenge the substance and evidentiary basis for a decision, and also extends to whether the Board proceeded in a manner that denied the plaintiff a fair hearing or otherwise suffered from procedural deficiencies in rendering its administrative decisions."); *see also Killgore v. City of S. El Monte*, No. 19-CV-00442-SVW-JEM, 2019 WL 8105371, at *12

1   (C.D. Cal. Dec. 19, 2019) ("This Court agrees with other California district courts that the

2   specific remedies available to Plaintiff under state law [for a violation of his property rights]—

3   namely administrative mandamus under § 1094.5 and appeal to state superior court under Cal

4   Gov't Code § 53069.4 make it impossible to sustain a procedural due process challenge here.").

5   Accordingly, Plaintiff's due process claim fails, and the undersigned recommends granting

6   Defendants' motion to dismiss as to this claim.[5]   Because it is not clear the pleading cannot

7   possibly be cured by the allegation of other facts, the undersigned recommends granting leave to

8   amend. *Bly–Magee v. Cal.*, 236 F.3d 1014, 1019

9   **G.      Bane Act**

10      "The Bane Act civilly protects individuals from conduct aimed at interfering with rights

11   that are secured by federal or state law, where the interference is carried out 'by threats,

12   intimidation or coercion.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018);

13   Cal. Civ. Code § 52.1(a)–(b).   To state a claim under the Bane Act, a plaintiff must allege "(1)

14   interference with or attempted interference with a state or federal constitutional or legal right, and

15   (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v.*

16   *City of Sacramento*, 234 Cal.App.4th 41, 57 (2015).   "Speech alone is not sufficient to support [a

17   Bane Act claim], except upon a showing that the speech itself threatens violence," and a person

18   "reasonably fears that, because of the speech, violence will be committed against them or their

19   property and that the person threatening violence had the apparent ability to carry out the threat."

20   Cal. Civ. Code § 52.1(k).   "[T]he Bane Act does not require the 'threat, intimidation or coercion'

21   element of the claim to be transactionally independent from the constitutional violation alleged."

22   *Reese*, 888 F.3d at 1043 (citing *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766,

23   798–99 (2017)).

24      As stated above, "[i]t is the burden of the party bringing a motion to dismiss for failure to

25   state a claim to demonstrate that the requirements of Rule 8(a)(2) have not been met." *Bryant v.*

26   *Apotex, Inc.*, No. 12-01377, 2013 WL 394705, at *5 (E.D. Cal. Jan. 30, 2013) (quoting *Gallardo*

27   ───────────────

28   [5] As discussed *supra*, Section 7 of the California Constitution does not support a claim for monetary damages, and therefore, Plaintiff has not alleged a due process claim for relief under the California Constitution.   *Roy v. Cnty. of Los Angeles*, 114 F. Supp. 3d 1030, 1043 (C.D. Cal. 2015).

1    *v. DiCarlo*, 203 F. Supp. 2d 1160, 1165 (C.D. Cal. 2002)).   Defendants only argument that

2    Plaintiff's Bane Act claim fails is the following: "Plaintiff's allegations do not meet the requisite

3    allegations."  (Doc. 11-1 at 19).  While the undersigned expresses no opinion on the merits of

4    Plaintiff's claim, Defendants bear the burden to explain the basis of their motion, and they have

5    failed to do so.  The undersigned recommends denying Defendants' motion as to this claim.

6    *Bryant*, 2013 WL 394705, at *5.

7    **H.       Motion to Strike**

8         Defendants request the Court strike from the FAC Plaintiff's references to the Fifth

9    Amendment, and his claims for attorney's fees and treble damages

10        **1.       The Fifth Amendment**

11        Defendants move to strike references to the Fifth Amendment, as the Fifth Amendment's

12   due process clause only applies to federal actors.  Plaintiff seeks relief based on the Fifth

13   Amendment in his First and Third Claims for Relief.  (Doc. 9 at 4).

14        "The Due Process Clause of the Fifth Amendment and the equal protection component

15   thereof  apply  only  to  actions  of  the  federal  government—not  to  those  of  state  or  local

16   governments." *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001) (citing *Schweiker v.*

17   *Wilson*, 450 U.S. 221, 227, (1981)).  Because Plaintiff has not alleged that Defendants are federal

18   actors, Plaintiff cannot allege a due process violation based on the Fifth Amendment.  *Lee*, 250

19   F.3d at 687.  Accordingly, the undersigned recommends granting Defendant's motion to strike

20   references to the Fifth Amendment in Plaintiff's First Claim for Relief for immateriality.  Fed. R.

21   Civ. P. 12(f).  *See Diamond S.J. Enterprise, Inc. v. City of San Jose*, No. 18-CV-01353-LHK,

22   2018 WL 5619746, at *4 (N.D. Call, Oct. 29, 2018) (granting a motion to strike references to the

23   Fifth Amendment where no defendant was a federal actor).

24        Plaintiff's Third Claim for Relief, however, alleges a takings claim, which is dependent on

25   the Fifth Amendment.  *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022) ("The

26   Takings Clause of the Fifth Amendment provides that 'private property' shall not 'be taken for

27   public use, without just compensation.'" (quoting U.S. Const., amend. V).  Defendants make no

28   argument to dismiss this claim, and therefore, the undersigned recommends denying Defendants'

1   motion to strike references to the Fifth Amendment in the Third Claim for Relief.

2         **1.**     **Attorney's Fees**

3         Defendants contend "[a]ttorney's fees are not applicable when a person is appearing pro

4   per." (Doc. 11-1 at 19) (citing *Trope v. Katz,* 11 Cal.4th 274, 281 (1995)).  Plaintiff states he is

5   entitled to attorney's fees because Defendants allegedly deprived him of his liberty and property

6   interests.  (Doc. 16 at 5).

7         As an initial matter, *Trope* is inapposite.  In *Trop*, the California Supreme Court held that

8   attorneys appearing in propria persona could not recover attorney's fees in an action to enforce a

9   contract.  *Trope*, 11 Cal.4th at 277.  The undersigned cannot say Plaintiff's request for attorney's

10  fees is immaterial under Fed. R. Civ. P. 12(f).  "Immaterial matter is that which has no essential

11  or important relationship to the claim for relief or the defenses being pleaded."  *Bradley-Aboyade*

12  *v. Crozier*, No. 2:19-cv-01098-TLN-AC, 2021 WL 3472238, at *3 (E.D. Cal. Aug. 6, 2021)

13  (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*,

14  510 U.S. 517 (1994)) (internal quotation marks omitted).  While Plaintiff states he will request

15  attorney's fees, a request does not entitle him to such, and a request for attorney's fees must be

16  approved by the court.  Fed. R. Civ. P. 54(d)(2).  Plaintiff may hire counsel to represent him at

17  any time, and therefore, the undersigned recommends denying Defendants' motion to strike in

18  this regard because it is unclear that Plaintiff's request for attorney's fees will have "no . . .

19  relationship to the claim for relief."  *See., e.g., Osgood v. Main Street Marketing, LLC.,* No.

20  16cv2415-GPC(BGS), 2017 WL 131829, at *13 (S.D. Cal. Jan. 13, 2017) ("To the extent

21  Plaintiffs seek to retain an attorney during prosecution of this case, and in order to preserve those

22  rights, the Court DENIES Defendants' motion to strike Plaintiffs' request for attorney's fees and

23  costs.").

24        **2.**     **Treble Damages**

25        Defendants request that the Court strike Plaintiff's request for treble damages, as "[t]he

26  same statutes that preclude punitive damages against a municipality also preclude an award of

27  treble damages against a municipality."  (Doc. 11-1 at 20) (citing *K.M. v. Grossmont Union High*

28  *School Dist.*, 84 Cal.App.5th 717, 742-3 (2022)).  As Plaintiff states he is not seeking "punitive

nor treble damages authorized by the Bane Act," the undersigned recommends granting Defendant's motion to strike references to treble damages in the FAC.

## VII.   CONCLUSION

For the foregoing reasons, the undersigned recommends the following:

(1) Defendant's Motion and Request for Leave to File a Late Opposition (Doc. 17) be GRANTED;

(2) Both parties' requests for judicial notice (Docs. 11, 18) be GRANTED;

(3) Defendant's Motion to Dismiss be GRANTED without leave to amend regarding Plaintiff's claims under Article 1, sections 2, 7, and 13 of the California Constitution;

(4) Defendant's Motion to Dismiss be GRANTED with leave to amend regarding Plaintiff's claim under Article 1, section 19 of the California Constitution and Plaintiff's § 1983 due process claim;

(5) Defendant's Motion to Dismiss be DENIED regarding Plaintiff's claim under the Bane Act and the § 1983 claim based on the First and Fourth Amendments;

(6) Defendant's Motion to Strike be GRANTED with regard to references to the Fifth Amendment in Plaintiff's First Claim for Relief and Plaintiff's request for treble damages; and

(7) Defendant's Motion to Strike be DENIED with regard to references to the Fifth Amendment in Plaintiff's Third Claim for Relief and Plaintiff's request for attorney's fees.

To the extent Plaintiff intends to plead a substantive due process claim, he must clarify this claim and properly allege it in his amended complaint.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.   Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendation with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."   The

district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **September 30, 2024**                        */s/ Sheila K. Oberto*
                                                                      UNITED STATES MAGISTRATE JUDGE